JS−6

1  LAWYERS FOR CLEAN WATER, INC.
2  Daniel Cooper (Bar No. 153576)
   Email:  Daniel @lawyersforcleanwater.com
3  1004A O'Reilly Avenue
   San Francisco, California 94129
4  Telephone: (415) 440-6520
   Facsimile: (415) 440-4155
5

6  Attorneys for Plaintiff INLAND EMPIRE WATERKEEPER, a program
7  of ORANGE COUNTY COASTKEEPER

8              UNITED STATES DISTRICT COURT
9             CENTRAL DISTRICT OF CALIFORNIA

10

11  INLAND EMPIRE WATERKEEPER, a          Case No. CV 09- 06147 GAF (RZx)
    program of ORANGE COUNTY
12  COASTKEEPER, a non-profit corporation,
13                                        **CONSENT DECREE**
            Plaintiff,
14      v.
15                                        **(Federal Water Pollution Control Act,
    AMERICAN METAL RECYCLING, INC.,        33 U.S.C. § 1251 *et seq.*)**
16  a California corporation,
17
            Defendant.
18

19

20      **WHEREAS**, Inland Empire Waterkeeper, a program of Orange County

21  Coastkeeper, is a non-profit corporation dedicated to the protection and enhancement of

22  the Upper Santa Ana River Watershed through programs of advocacy, education,

23  research, restoration, and enforcement;

24      **WHEREAS,** Orange County Coastkeeper is a non-profit corporation dedicated to

25  the preservation, protection and defense of the environment, the wildlife, and the natural

26  resources of Orange County area waters, including the Santa Ana River Watershed and

27  its receiving waters;

28

1    **WHEREAS,** Inland Empire Waterkeeper and Orange County Coastkeeper are

2 collectively referred to herein as ("Waterkeeper" or "Plaintiff");

3    **WHEREAS**, American Metal Recycling, Inc. ("American Metal" or

4 "Defendant") is an Owner and/or Operator of the American Metal scrap metal recycling

5 facility located at 11150 Redwood Avenue, Fontana, California (hereinafter "Facility");

6    **WHEREAS**, on 10 June 2009, Waterkeeper served American Metal, the United

7 States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water

8 Resources Control Board ("State Board") and the Regional Water Quality Control

9 Board ("Regional Board"), with a notice of intent to file suit ("60-Day Notice") for

10 violations of the Federal Water Pollution Control Act, 33 U.S.C. §§1251 *et seq.* ("Clean

11 Water Act" or "CWA").  The notice alleged that the recipients had in the past and in

12 fact continue to violate Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and

13 1342, by discharging pollutants into Receiving Waters in violation of National Pollution

14 Discharge Elimination System ("NPDES") General Permit No. CAS0000001 [State

15 Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ

16 ("Industrial Permit") and the CWA;

17    **WHEREAS**, on 24 August 2009, Waterkeeper filed a complaint against American

18 Metal in the United States District Court, Central District of California, Eastern

19 Division (Civil Case No. CV 09- 06147 GAF (RZx)) entitled *Inland Empire Waterkeeper et*

20 *al., v. American Metal Recycling, Inc.* ("Complaint");

21    **WHEREAS,** Defendant denies all allegations set forth in the Complaint;

22    **WHEREAS**, Waterkeeper and American Metal (collectively referred to herein as

23 the "Settling Parties" or "Parties") have agreed that it is in the Parties' mutual interest to

24 enter into a Consent Decree setting forth terms and conditions appropriate to resolving

25 the allegations set forth in the Complaint without further proceedings; and

26

27

28

**WHEREAS**, all actions taken by American Metal pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations;

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A);

2.      Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the Act, 33 U.S.C. §1365(c)(1), because the Facility at which the alleged violations took place is located within this District;

3.      The Complaint states a claim upon which relief may be granted against American Metal pursuant to Section 505 of the Act, 33 U.S.C. § 1365;

4.      Waterkeeper has standing to bring this action.

5.      The Court shall retain jurisdiction over this matter for purposes of interpreting, modifying or enforcing the terms of this Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

**I.   OBJECTIVES**

6.      It is the express purpose of the Parties entering into this Consent Decree to further the objectives set forth in Section 101 *et seq*. of the CWA, 33 U.S.C. § 1251 *et seq*., and to resolve those issues alleged by Waterkeeper in its Complaint.  In light of these objectives and as set forth fully below, American Metal agrees, *inter alia*, to comply with the provisions of this Consent Decree and to comply with the requirements of the Industrial Permit and all applicable provisions of the CWA at the Facility. Specifically, Receiving Water Limitation C(2) in the Industrial Permit requires that the Facility "not cause or contribute to the exceedance of an applicable water quality

standard." Effluent Limitation B(3) of the Industrial Permit requires that Best Management Practices ("BMPs") be developed and implemented to achieve Best Available Technology ("BAT") and the Best Conventional Pollutant Control Technology ("BCT"). American Metal is required to develop and implement BMPs necessary to comply with the Industrial Permit's requirement to achieve compliance with BAT/BCT standards and with Water Quality Standards. BMPs must continue to be developed and implemented to prevent discharges or to reduce contamination in storm water discharged from the Facility sufficient to achieve the numeric limits detailed in Tables 1 and Table 2 in section II.B below.

## II.   **COMMITMENTS OF THE PARTIES**

### A.   **Industrial Storm Water Pollution Control Measures**

7.      The storm water pollution control measures and contaminant reduction provisions of this Consent Decree shall only apply to rainfall events up to and including the 5-year 24-hour return period rain event ("Qualifying Storm Event"), as defined by the National Oceanographic and Atmospheric Administration ("NOAA") Atlas 14, Vol. I, Version 4 (2006) with an assumed dry antecedent condition and 3.9 total inches of rainfall over a 24-hour period. The Parties agree that any discharge of stormwater and/or non-stormwater pollutants from the Facility in connection with a rainfall event that exceeds a Qualifying Storm Event is not a violation of this consent decree.

8.      American Metal is in the process of developing and implementing a storm water discharge treatment system involving the use of stormwater holding tanks and filters designed to harvest, capture, store, and treat stormwater prior to discharge from the southeast corner of the Facility. In accordance with the requirements of section II.C below, within thirty (30) days of the Effective Date of this Consent Decree, American Metal shall revise the Stormwater Pollution Prevention Plan ("SWPPP") currently in effect at the Facility to fully describe the current features and treatment capacity of this stormwater treatment system. In addition, American Metal agrees to develop,

implement, and/or continue to maintain, as applicable, additional measures as necessary to reduce contamination in storm water discharged from the Facility to levels below the numeric limits set forth in Table 1 and Table 2 in section II.B below.  These additional measures may include:

   (a) <u>Materials Storage and Industrial Activities</u>.  Placing sources of contamination in covered containers or under cover with such areas contained by berming or other containment sufficient to prevent the exposure of pollutants to storm water or rainwater and the runoff or discharge of pollutants;

   (b) <u>Coating</u>.  Coating structural sources of contamination (e.g. galvanized building roofs (other than the existing non-ferrous building which has been coated)), and siding);

   (c) <u>Sweeping</u>. Employing high efficiency sweeping in order to prevent the discharge of pollutants;

   (d) <u>Harvesting and</u> <u>Storing Runoff.</u>  Constructing and maintaining on-site retention facilities (such as retention ponds or swales, infiltration basins, baker tanks, sumps, cisterns, or dry wells/ injection wells) designed to hold and store the runoff generated by a 5-year 24-hour return period storm event without any off-site discharge;

   (e) <u>Treating Runoff</u>.  Treating runoff discharging from the site.

   (f) <u>Sand Filters</u>. Treating runoff discharging from the site with devices such as sand filters evaluated in the Caltrans Retrofit Study ("CRS") or equivalent treatment devices at appropriate locations.

   (g) <u>Routing Discharge to the Publicly Owned Treatment Works.</u>  Routing discharge to the publicly owned treatment works ("POTW")/ sanitary sewers, in combination with on-site retention such that flows are discharged off-peak in the POTW so as not to risk exacerbating wet weather Sanitary Sewer Overflow risks from the POTW.

   (h) <u>Vehicle and Equipment Maintenance and Fueling.</u>

i.     Conducting all vehicle and equipment maintenance and fueling at the Facility on asphalt or another impermeable surface;

ii.     Conducting all vehicle and equipment maintenance and fueling at the Facility under cover;

iii.     Berming of otherwise containing the surface of the area where vehicle maintenance and fueling occurs (hereinafter "Maintenance and Fueling Area") in order to prevent the exposure of pollutants to storm water or rainwater and the runoff or discharge of pollutants;

iv.     Cleaning the Maintenance and Fueling Area as necessary to control track-off of pollutants;

v.     Dispensing all petroleum products within the Maintenance and Fueling Area(s);

vi.     Installing tire washing facilities at exit points from the Facility to prevent off-site tracking from vehicles;

vii.     Annually power washing the entire paved part of the Facility, including areas not reachable by mechanical sweepers, and dispose of the contaminated water consistent with all federal, state and local requirements, and not to area storm drains.

**B.     Sampling, Monitoring, Inspecting, and Reporting**

9.   Sampling Program.  Within thirty (30) days of the Effective Date of this Consent Decree, Defendant shall revise its monitoring and reporting plan ("M&RP") to comply with this section.  All storm water discharge locations shall be sampled at the Facility.  Storm water samples collected must represent the discharge at the point it leaves the Facility.  For example, if storm water is discharging from both sides of a driveway, two separate storm water samples must be collected from each side of the driveway.  Additionally, sampling of stored or contained storm water shall occur at the

1    time the stored or contained storm water is released.  Finally, the M&RP shall be revised
2    to include sampling at all new or additional discharge points created in the future.

3        10.  <u>Waterkeeper's Review of Revised M&RP.</u>  Defendant agrees to submit the
4    revised M&RP to Waterkeeper for review and comment as soon as it is completed but in
5    any event no later than thirty (30) days from the Effective Date of this Consent Decree.
6    Waterkeeper shall provide comments, if any, to the Defendant within thirty (30) days of
7    receipt of the M&RP. Defendant shall incorporate Plaintiff's comments into the M&RP,
8    or shall justify in writing why any comment is not incorporated within thirty (30) days of
9    receiving comments.  Any disputes as to the adequacy of the M&RP shall be resolved
10   pursuant to the dispute resolution provisions of this Consent Decree, set out at Section IV
11   below.

12       11.  <u>Sample Analysis and Sample Frequency.</u>  Beginning with the 2010/2011 Wet
13   Season (defined as October 1- May 31), and continuing through the 2011-2012 Wet
14   Season, Defendant shall collect storm water samples from each discharge location from
15   each storm event at the Facility up to five storm events per Wet Season.  Defendant may
16   discontinue analyzing storm water samples for a constituent specified in Tables 1 and 2 if
17   five consecutive sampling results within a Wet Season for the constituent are reported as
18   below the limits in Tables 1 and 2. Defendant may discontinue analyzing storm water
19   samples for PCBs if five consecutive sampling results using the method referenced in
20   paragraph 12 below show that PCBs were not detected.

21       12.  Defendant shall analyze the samples for the constituents identified in Table 1
22   and Table 2.  A California State certified laboratory shall perform all sample chemical
23   analyses.  Defendant shall select laboratories and analytical limits such that, at a
24   minimum, the method detection limits ("MDLs") shall be below both the Table 1 and
25   Table 2 Limits set forth herein, with the exception of PCBs. When testing for PCBs,
26   Defendant shall analyze samples using gas chromatography, SW-486, method 8082.  In
27
28

1   addition, Defendant shall perform sampling as required by the Industrial Permit for the

2   Facility.

3       13.   BAT/BCT and Technology Based Limits:[1] The BAT/BCT limits are as

4   follows:

5       **Table 1**

| Contaminant (All metals are total recoverable) | Limit (All but pH expressed as Mg/L) |
|---|---|
| Total suspended solids | 100 |
| Copper | 0.064123 |
| Lead | 0.081669 |
| Zinc | 0.117 |
| Oil and grease | 15 |
| Aluminum | 0.750 |
| Arsenic | 0.16854 |
| Cadmium | 0.0159 |
| Iron | 1.00 |
| Mercury | 0.0024 |
| Nickel | 1.417 |
| Silver | 0.0318 |
| Chemical oxygen demand | 120 |
| pH | 6.0-9.0 units |

18      14.   Water Quality Standard (WQS) Based Limits:  The WQS Based Limits are as

19   follows:

20   ///

---

22      [1] The Best Available Technology ("BAT") limits were derived from the International BMP
23   Database assembled by EPA and others for contaminants measured at a variety of BMPs, accepted into
     the database, and subjected to statistical analysis.  The proposed BAT limit is generally based on the
24   maximum median pollutant discharge concentration among all reported BMP types, except
     hydrodynamic devices (which perform more poorly than land-based BMPs).  In some cases the Caltrans
25   Retrofit Pilot Study results for the same BMPs were also consulted to guide the selection.  The BAT
     limit for oil and grease is equivalent to the widely accepted capability of a coalescing plate or equivalent
26   oil/water separator.  Other contaminants common in scrap yard discharges are not represented at all, or
     are not sufficiently represented, in the database to set BAT limits.  In these cases the limits are the
27   benchmarks in the EPA multi-sector industrial permit. Defendant shall analyze for hardness when
28   collecting samples and Defendant may adjust limits based on hardness where applicable.

**Table 2**

| Contaminant | Limit (All but pH expressed as Mg/L) |
|---|---|
| Arsenic | .340 |
| Cadmium | 0.0043 |
| Copper | 0.013 |
| Lead | 0.065 |
| Nickel | 0.470 |
| Silver | 0.0034 |
| Zinc | 0.120 |
| PCBs | Goal of 0.000014 |
| Chemical oxygen demand | 30 |
| pH | 6.5-8.5 units |

15.  Action Plan for Table 1 or Table 2 Exceedances.  American Metal shall submit an action plan if any sampling demonstrates discharges of storm water containing concentration of pollutants exceeding a Table 1 or 2 limit that complies with the requirements below.  Disputes regarding the action plan shall be subject to the dispute resolution procedures in Section IV below. The Parties agree to comply with the dispute resolution procedures set forth in Section IV below if there are any disagreements or disputes regarding any of the action plan(s) discussed below.

a.  Benchmark Levels Action Plan. Defendant shall provide Waterkeeper with a Benchmark Action Plan within thirty (30) days of American Metal's receipt of storm water sampling data demonstrating an exceedance of a Benchmark Level at the Facility.  The Action Plan shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of the Benchmark Levels, (2) an assessment of the source of each pollutant exceedance, (3) the identification of additional BMPs that will be implemented to achieve compliance with the Benchmark Levels set forth in Table 1, and (4) time schedules for implementation of the proposed BMPs.  Waterkeeper shall have thirty (30) days upon receipt of Defendant's Benchmark Action Plan to provide Defendant with comments.  Defendant shall have sixty (60) days from the date Waterkeeper comments on Defendant's Benchmark Action Plan to implement any

1   additional non-structural or structural BMPs recommended by Waterkeeper. Within this

2   sixty (60) day period American Metal shall provide a written explanation if American

3   Metal does not develop and/or implement any of Waterkeeper's recommended additional

4   BMPs.  If any structural BMPs require any agency approval, then Defendant shall contact

5   Waterkeeper to request an extension of the deadline to implement the structural BMPs

6   requiring agency approval. Waterkeeper's consent to Defendant's requested extension

7   shall not be unreasonably withheld.  Defendant shall notify Waterkeeper in writing when

8   the Action Plan has been implemented.

9           b.   <u>WQS Action Plan</u>.  Defendant shall provide Waterkeeper with a WQS

10   Action Plan by July 1 following the 2010-2011 Wet Season if storm water sampling data

11   demonstrates an exceedance of a WQS Level at the Facility.  The WQS Action Plan

12   shall set forth additional BMPs designed to achieve compliance with Table 2 limits.  The

13   WQS Action Plan shall include at a minimum: (1) the identification of the pollutant(s)

14   discharged in excess of the WQS; (2) an assessment of the source of the pollutant; (3) the

15   identification of additional BMPs that will be implemented to achieve compliance with

16   the applicable WQS; and (4) time schedules for implementation of the proposed

17   structural and non-structural BMPs.  Waterkeeper shall have thirty (30) days upon receipt

18   of Defendant's WQS Action Plan to provide Defendant with comments.  Defendant shall

19   have sixty (60) days from the date Waterkeeper comments on Defendant's Action Plan to

20   implement any additional non-structural or structural BMPs.  Within this sixty (60) day

21   period American Metal shall provide a written explanation if American Metal does not

22   develop and/or implement any of Waterkeeper's recommended additional BMPs.  If any

23   structural BMPs require any agency approval, then Defendant shall contact Waterkeeper

24   to request an extension of the deadline to implement the structural BMPs requiring

25   agency approval. Waterkeeper's consent to Defendant's requested extension shall not be

26   unreasonably withheld.  Defendant shall notify Waterkeeper in writing when the Action

27   Plan has been implemented.

28

1          c.  <u>Action Plan for Year 2 Wet Season</u>. If at the end of the 2011-2012 Wet

2    Season, storm water sample results demonstrate that Defendant continues to discharge

3    storm water and/or non-stormwater containing pollutants exceeding the limits set forth in

4    Tables 1 and/or 2, the Parties shall meet and confer by July 1, 2012 to discuss the sample

5    results, current BMPs, and to develop an action plan designed to achieve the limits in

6    Tables 1 and 2 ("Year 2 Action Plan").  Within thirty (30) days of the meet and confer,

7    Defendant shall develop and submit the Year 2 Action Plan to Waterkeeper.

8    Waterkeeper shall provide comments on the Year 2 Action Plan within thirty (30) days of

9    receipt of the Action Plan.   Within fourteen (14) days of receiving Waterkeeper's

10   comments, American Metal shall revise the Year 2 Action Plan to include Waterkeeper's

11   comments, unless American Metal demonstrates that the amended Year 2 Action Plan is

12   infeasible, or that the costs to implement the Benchmarks Action Plan, WQS Action Plan

13   and the revised Year 2 Action Plan would exceed the combined sum of Three-Hundred

14   and Fifty Thousand ($350,000.00) Dollars.  American Metal shall implement the Year 2

15   Action Plan within Ninety (90) days of revising the Year 2 Action Plan to include

16   Waterkeeper's comments, unless dispute resolution is invoked.  American Metal shall

17   notify Waterkeeper in writing when the Year 2 Action Plan has been implemented.

18   Disputes relating to the Year 2 Action Plan shall be subject to the dispute resolution

19   provisions in Section IV below.

20       16.  <u>Development of categorical discharge permit for scrap metal industry.</u>

21   Waterkeeper and certain members of the scrap metal recycling industry are currently

22   involved in a process to develop a proposed categorical storm water permit for the scrap

23   metal recycling industry.  In the event that these negotiations result in execution by

24   Waterkeeper of an agreement with American Metal and other scrap metal recyclers

25   establishing a proposed categorical storm water permit that includes BMPs and numeric

26   limits for the contaminants set forth in Table 1 or Table 2 above ("Agreement"), then the

27   applicable terms of the proposed categorical storm water permit shall be substituted for

28

the Commitments of the Parties in Section II of this Consent Decree, except for the commitments in Paragraphs 11, 12, 19, 20, 21, 22, 23, 24, and 25, which shall remain enforceable.  Upon execution of the Agreement by Waterkeeper and American Metal, any storm water discharge sampling at the Facility revealing an exceedance of the limits set forth in the proposed categorical storm water permit developed by the parties and agreed to by Waterkeeper and American Metal shall constitute a violation of this Consent Decree.

**C.    Storm Water Pollution Prevention Plan**

17.    <u>SWPPP Revisions.</u>  Within thirty (30) days of the Effective Date of this Consent Decree, Defendant agrees to revise the SWPPP currently in effect at the Facility to incorporate all storm water pollution prevention measures and other applicable requirements set forth in this Consent Decree and/or the Industrial Permit. Specifically, the SWPPP shall include a description of all industrial activities and corresponding potential pollution sources and, for each potential pollutant source, a description of the potential pollutants from the sources.  The SWPPP shall also identify BMPs (and their implementation dates) designed to achieve compliance with the provisions of this Consent Decree, including, but not limited to, a thorough description of the current features and treatment capacity of the stormwater treatment system discharging to the outfall located at the southeast corner of the Facility.  American Metal shall revise the SWPPP as necessary to incorporate additional BMPs developed pursuant to this Consent Decree.

18.    <u>Waterkeeper's Review of Revised SWPPP.</u>  Defendant agrees to submit the revised SWPPP to Waterkeeper for review and comment as soon as it is completed but in any event no later than thirty (30) days from the Effective Date of this Consent Decree. Within thirty (30) days of Waterkeeper's receipt of the revised SWPPP, Waterkeeper shall provide Defendant with comments and suggestions, if any, concerning the revisions to the SWPPP.  Within thirty (30) days of Defendant's receipt of Waterkeeper's

comments on the revised SWPPP, Defendant shall incorporate Waterkeeper's comments and re-issue the SWPPP.  Any disputes as to the adequacy of the SWPPP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out at Section IV below.

### D. Monitoring and Reporting

19.    Site Inspections.  For the term of this Consent Decree, Waterkeeper, Waterkeeper's Water Quality Engineer, accompanied by Waterkeeper's attorney or other representative, may conduct up to three yearly Site Inspections at the Facility.  Site inspections shall occur during normal business hours and Waterkeeper shall provide Defendant with as much notice as possible, but at least twenty-four (24) hours notice during the Wet Weather season and forty-eight (48) hours notice during the dry season prior to each inspection.  Notice will be provided by phone and electronic mail.  During the Site Inspections, Waterkeeper and/or its representatives shall be allowed access to the Facility's SWPPP and related monitoring records and to all storm water monitoring reports and related data for the Facility.  During the Site Inspections, Waterkeeper and/or its representatives may collect samples of storm water discharges at the Facility.  A certified California laboratory shall analyze storm water samples collected by Waterkeeper.  During the life of this Consent Decree, Waterkeeper shall provide American Metal with all laboratory analyses related to the Facility within ten (10) days of Waterkeeper's receipt of such information.

20.    Compliance Monitoring and Oversight.  American Metal agrees to help defray Waterkeeper's reasonable costs incurred in conducting Site Inspections and compliance monitoring by reimbursing Waterkeeper Ten Thousand Dollars ($10,000) for these costs within thirty (30) days of the Effective Date of this Consent Decree. American Metal agrees to make compliance monitoring and oversight funds payable to "Lawyers for Clean Water Attorney Client Trust Account" and delivered by certified

1  mail or overnight delivery to Lawyers for Clean Water, Inc., 1004A O'Reilly Avenue,

2  San Francisco, California 94129 attention Layne Friedrich.

3       21.   <u>Reporting.</u>  During the life of this Consent Decree, on a monthly basis,

4  American Metal shall provide Waterkeeper with a copy of all compliance and monitoring

5  data, including inspection reports, related to storm water at the Facility.  During the life

6  of this Consent Decree, American Metal shall provide Waterkeeper with all laboratory

7  analyses related to storm water at the Facility within seven days of American Metal's

8  receipt of such information.

9       22.   <u>Document Provision.</u>  During the life of this Consent Decree, American

10  Metal shall copy Waterkeeper on all documents related to water quality at the Facility

11  that are submitted to the Regional Board, the State Board, and/or any State or local

12  agency or municipality.  Such reports and documents shall be provided to Waterkeeper

13  concurrently as they are sent to the agencies and/or municipalities.  Any correspondence

14  received by American Metal from any regulatory agency during the life of this Consent

15  Decree shall be provided to Waterkeeper within three (3) business days of receipt by

16  American Metal.

17      **E.**    **Environmental Projects and Fees and Costs**

18       23.   <u>Environmental Mitigation Project.</u>  American Metal agrees to pay Twenty

19  Thousand Dollars ($20,000.00) to the Public Interest Green Fund  for use in a

20  supplemental environmental project to eliminate or mitigate the impacts of storm water

21  pollution to the Declez Channel and/or to the Santa Ana River watersheds receiving

22  discharges from the Facility.  American Metal shall make the mitigation payment within

23  thirty (30) days of the Effective Date of this Consent Decree and mail via certified mail

24  or overnight delivery to the Public Interest Green Fund at the Orange County Community

25  Foundation, 30 Corporate Park, Suite 410, Irvine, California 92606.  American Metal

26  shall provide Waterkeeper with a copy of such payment.

27

28

24. <u>Waterkeeper's Fees and Costs.</u>  American Metal agrees to reimburse Waterkeeper for Waterkeeper's investigation fees and costs, expert fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and preparing the lawsuit, and negotiating a resolution of this matter, totaling One Hundred Ten Thousand One Hundred Twelve ($110,112.00) Dollars.  Payment of 110,112.00 Dollars shall be made within thirty (30) days of the Effective Date, payable to "Lawyers for Clean Water Attorney Client Trust Account" and delivered by certified mail or overnight delivery to: Lawyers for Clean Water, Inc., 1004A O'Reilly Avenue, San Francisco, California 94129 attention Layne Friedrich.

25. <u>Stipulated Payment</u>. American Metal shall make a remediation payment of One Thousand Dollars ($1,000) for each missed deadline included in or contemplated by this Consent Decree, unless the missed deadline results from a Force Majeure Event. Payments for missed deadlines shall be made to the Public Interest Green Fund for the restoration and/or improvement of the watersheds receiving discharges from the Facility. American Metal agrees to make the stipulated payment within thirty (30) days of a missed deadline and mail via certified mail or overnight delivery to the Public Interest Green Fund at the Orange County Community Foundation, 30 Corporate Park, Suite 410, Irvine, California 92606.  American Metal shall provide Waterkeeper with a copy of each such payment.

## F.   Commitments of Plaintiff

26. Within three days of the final signature of this Consent Decree by the Parties, Waterkeeper shall file a Notice of Tentative Settlement and Notice of 45-Day Review Period in the United States District Court for the Central District of California ("District Court").

27. <u>Review by Federal Agencies</u>.  Plaintiff shall submit this Consent Decree to EPA and the U.S. Department of Justice ("DOJ") within three days of the final signature of the Parties for review consistent with 40 C.F.R. § 135.5.  The agency review period

expires forty-five (45) days after receipt by both agencies, as evidenced by the certified return receipts, copies of which shall be provided to Defendant if requested.  In the event that EPA or DOJ object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by EPA or DOJ.

28.     Plaintiff shall file this Consent Decree with the District Court within three (3) days of the Effective Date. Waterkeeper is responsible for notifying Defendant of the District Court's entry of the Order dismissing these claims with prejudice.  Such notification can be satisfied by the Central District of California's Case Management/ Electronic Case Filing ("CM/ECF") notification to the Parties that the Order was executed and entered by the District Court.

## III.    EFFECTIVE DATE AND TERMINATION DATE

29.  The term "Effective Date," as used in this Consent Decree, shall mean the last date for the United States Department of Justice and the United States Environmental Protection Agency ("Federal Agencies") to comment on the Consent Decree, i.e., the 45th day following the United States Department of Justice and United States Environmental Protection Agency's receipt of the Consent Decree or, the date on which the Federal Agencies provides notice that it requires no further review and the Court enters the final Consent Decree, whichever occurs earlier.

30.  This Consent Decree will terminate after demonstration by American Metal that it has completed implementation of all required Action Plan(s) provided for under paragraph 15 above.  If the proposed categorical storm water permit agreed to under paragraph 16 provides for preparation of an action plan(s) in the event that sampling data reveal an exceedance of any limit for any constituent(s) under the proposed categorical permit, then the Consent Decree will terminate after American Metal has completed implementation of all action plan(s) provided for under the terms of the proposed categorical storm water permit, if agreed to by Waterkeeper and American Metal. To make the demonstration under paragraph 15, or under the action plan(s) required by the

terms of the categorical storm water permit, American Metal shall provide Waterkeeper with a written report showing that all structural and/or non-structural BMPs required by the Action Plan(s) have been implemented and are functioning at the Facility. At its discretion, Waterkeeper, Waterkeeper's Water Quality Engineer, accompanied by Waterkeeper's attorney or other representative, shall have thirty (30) days from receipt of the written report required to make the demonstration that the action plan(s) have been implemented and are functioning at the Facility to conduct a site inspection prior to termination of this Consent Decree.

## IV.   DISPUTE RESOLUTION

31.   This Court shall retain jurisdiction over this matter for the purposes of implementing and enforcing the terms and conditions of this Consent Decree, and adjudicating all disputes among the parties that may arise under the provisions of this Consent Decree.  The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies.

32.   Meet and Confer.  A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Parties in writing of the matter(s) in dispute and of the party's intention to resolve the dispute under this Section. The Parties shall then meet and confer in an attempt to resolve the dispute informally over a period of fourteen (14) calendar days from the date of the notice.

33.   If the Parties cannot resolve a dispute by the end of meet and confer informal negotiations, the party invoking the dispute resolution provision shall provide notice to the other party that it intends to invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California.  The Parties shall jointly apply to the Court for an expedited hearing schedule on the motion.

34.   If Waterkeeper initiates a motion or proceeding before the Court relating to enforcement of the terms and conditions of this Consent Decree, Waterkeeper shall be

1  entitled to recover fees incurred to enforce the terms of this Consent Decree consistent

2  with the provisions of Sections 505 and 309 of the CWA, 33 U.S.C. §1365 and § 1319.

3  **V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

4       35.    In consideration of the above, upon the Effective Date of this Consent

5  Decree, the Parties hereby fully release, except for claims for American Metal's failure to

6  comply with this Consent Decree and as expressly provided below, each other and their

7  respective successors, assigns, officers, agents, employees, and all persons, firms and

8  corporations having an interest in them, from any and all alleged CWA violations

9  claimed in the Complaint, up to and including the Effective Date of this Consent Decree

10  and until its termination.

11       36.    Nothing in this Consent Decree limits or otherwise affects Waterkeeper's

12  right to address or take any position that it deems necessary or appropriate in any formal

13  or informal proceeding before the Regional Board, EPA, or any other judicial or

14  administrative body on any other matter relating to American Metal.

15  **VI.    MISCELLANEOUS PROVISIONS**

16       37.    Neither the Consent Decree nor any payment pursuant to the Consent Decree

17  shall constitute or be construed as a finding, adjudication, or acknowledgement of any

18  fact, law or liability, nor shall it be construed as an admission of violation of any law,

19  rule, or regulation. Defendant maintains and reserves all defenses it may have to any

20  alleged violations that may be raised in the future.

21       38.  Force Majeure.  Defendant shall notify Waterkeeper pursuant to the terms of

22  this paragraph, when implementation of the requirements set forth in this Consent

23  Decree, within the deadlines set forth in those paragraphs, becomes impossible, despite

24  the timely good-faith efforts of Defendant, due to circumstances beyond the reasonable

25  control of Defendant or its agents, and which could not have been reasonably foreseen

26  and prevented by the exercise of due diligence by Defendant.  Any delays due to

27  Defendant's failure to make timely and bona fide applications and to exercise diligent

28

efforts to obtain any necessary permits, or due to normal inclement weather, shall not, in any event, be considered to be circumstances beyond American Metal's control.  Force majeure shall not include economic hardship or inability to pay.

a.   If Defendant claims impossibility, it shall notify Waterkeeper in writing within twenty-one (21) days of the date that American Metal first knew of the event or circumstance that caused or would cause a violation of this Consent Decree or the date American Metal should have known of the event or circumstance by the exercise of due diligence.  The notice shall describe the reason for the nonperformance and specifically refer to this Section.  It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by American Metal to prevent or minimize the delay, the schedule by which the measures will be implemented, and the anticipated date of compliance. American Metal shall adopt all reasonable measures to avoid and minimize such delays.

b.   The Parties shall meet and confer in good-faith concerning the non-performance and, where the Parties concur that performance was or is impossible, despite the timely good faith efforts of American Metal, due to circumstances beyond the control of American Metal that could not have been reasonably foreseen and prevented by the exercise of due diligence by American Metal, new deadlines shall be established. If Waterkeeper disagrees with American Metal's notice, or in the event that the Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the Dispute Resolution Procedure pursuant to Section IV above.  In such proceeding, American Metal shall bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by force majeure and the extent of any delay attributable to such circumstances.

39.   <u>Construction</u>.  The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Industrial Permit, the Clean Water Act, or specifically herein.

40.     Choice of Law.  The laws of the United States shall govern this Consent Decree.

41.     Severability.  In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

42.     Correspondence.  All notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by regular, certified, electronic mail, or overnight mail as follows:

If to Plaintiff:

Daniel G. Cooper, Esq.
Lawyers for Clean Water, Inc.
1004 O'Reilly Ave.
San Francisco, CA 94129
Daniel@lawyersforcleanwater.com

With copies to:

Garry Brown
Orange County Coastkeeper
3151Airway Avenue, Suite F-110
Costa Mesa, CA 92626
garry@coastkeeper.org


If to Defendant:

Jennifer Friend, Esq.
Selman Brietman LLP
600 W. Santa Ana Blvd., Suite 501
Santa Ana, CA 92701-4551
jfriend@selmanbreitman.com

With copies to:

Todd Rubin
American Metal Recycling, Inc.

11150 Redwood Avenue
Fontana, CA 92337

Notifications of communications shall be deemed submitted three days after the date that they are postmarked and sent by first-class mail or deposited with an overnight mail/delivery service.  Any change of address or addresses shall be communicated in the manner described above for giving notices.  In addition, the Parties may agree to transmit documents electronically or by facsimile.

43.   <u>Effect of Consent Decree</u>.  Plaintiff does not, by its consent to this Consent Decree, warrant or aver in any manner that the Defendant's compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of the Defendant to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

44.   <u>Counterparts</u>.  This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

45.   <u>Modification of the Consent Decree</u>.  This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties.

46.   <u>Full Settlement</u>.  This Consent Decree constitutes a full and final settlement of this matter.

47.   <u>Integration Clause</u>.  This is an integrated Consent Decree.  This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the parties and expressly supersedes any and all prior oral or written agreements

covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

48.     _Authority_.  The undersigned representatives for Plaintiff and Defendant each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

49.     The provisions of this Consent Decree apply to and bind the Parties, including any successors or assigns.  Unless expressly provided herein, the obligations arising under this Consent Decree take effect as of execution of this Consent Decree. The Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties to its terms.

50.     The Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.  By entering into this Consent Decree, Defendant does not admit liability for any purpose as to any allegation or matter arising out of this Action.

The undersigned representatives for Waterkeeper and Defendant each certifies that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree and that this Consent Decree binds that party.

///

///

///

///

///

///

///

///

///

1   IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as

2   of the date first set forth below.

3                                          LAWYERS FOR CLEAN WATER, INC.

4

5   Dated:    3   June May 2010

6                                          Daniel Cooper

7                                          Lawyers for Clean Water, Inc.
                                           Attorneys for Plaintiff
8                                          Inland Empire Waterkeeper/

9                                          Orange County Coastkeeper

10

11                                         INLAND EMPIRE WATERKEEPER

12

13  Dated:    3   June May 2010        by:

14                                          Garry Brown
                                            Inland Empire Waterkeeper/
15                                          Orange County Coastkeeper

16

17                                         SELMAN BREITMAN, LLP

18

19  Dated:    31   May 2010

20                                          Jennifer Friend
                                            Attorney for Defendant
21                                          American Metal Recycling, Inc.

22

23                                         AMERICAN METAL RECYCLING, INC

24

25

26  Dated:    28   May 2010           by:

27                                          Todd Rubin
                                            American Metal Recycling, Inc.
28

[Proposed] Consent Decree                      23              Case No. CV 09-06147 GAF (RZx)

1
2                                          AMERICAN METAL RECYCLING, INC.
3
   Dated:        28  May 2010          by: _____
4
                                          George Adams
5                                         American Metal Recycling, Inc.
6
7
8  IT IS SO ORDERED.
9
10
11  Dated: _____July 26, 2010_____
12
                                          Honorable Gary A. Feess
13                                        UNITED STATES DISTRICT COURT
                                          CENTRAL DISTRICT OF CALIFORNIA
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
   [Proposed] Consent Decree          24              Case No. CV 09-06147 GAF (RZx)